## THE STATE v. WILLIAM R. COYNE, Appellant.

### Division Two, November 24, 1908.

1. **PERJURY: Insufficient Indictment: Belief.**    An indictment which charges that defendant, in his testimony before a grand jury, swore that he did not believe he had done certain things, and then goes on to charge that he did those things, but does not charge that he did at the time he testified believe he had done them, or that he swore falsely, is insufficient.    The indictment in the perjury case must specifically charge that defendant did believe the things he swore he did not believe, or that he believed and well knew the statements made by him under oath were false.

2. ———: ———: ———: **Recalling Fact.**    Where the indictment in the perjury case charged that defendant had stated under oath that he did not recall having visited one Ascher and soliciting money from him to be used in securing the enactment by the city council of an ordinance in which Ascher was pecuniarily interested, but charged that in truth and in fact he did so approach Ascher and solicited said money, it did not sufficiently charge him with perjury.  The indictment does not charge that the matter sworn to by defendant was not that he had not done those things, but that he had falsely testified that he did not believe that he had done those things and did not recall that he had done them.    The averment that he did in fact approach Ascher and solicit money for a corrupt purpose, is not an averment that he testified falsely when he swore that he did not believe or recall that he had done those things.    To have made a good indictment it was necessary for the pleader to have averred that the defendant believed and well knew that the statements made by him upon oath to the effect that he did not believe and did not recall, were false. That is the meaning of our statute (Sec. 2039, R. S. 1899) which requires that the indictment for perjury shall contain "proper averments to falsify the matter wherein the perjury is assigned."

3. **INSUFFICIENT INDICTMENT: Available on Appeal.**    An indictment which is defective for that it does not state facts sufficient to constitute a crime, may be assailed for the first time in the appellate court.

4. **PERJURY: Recalling Facts: Evidence: Failing Memory.** Where the charge is that defendant swore falsely when he testified that he did not believe he did certain things and that he did

not recall them, testimony that down to a date recently prior to the alleged false swearing defendant's memory was wholly unreliable and that he was on the brink of paresis, is competent evidence—not to show that he was either wholly or partially insane, or unable to appreciate the moral or physical consequences of an unlawful act, but to show that his memory was wholly unreliable and whether or not he did in fact recall what he had done at the time he swore he did not.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams*, Judge.

REVERSED AND REMANDED.

*Chester H. Krum, Thomas J. Rowe* and *Horace L. Dyer* for appellant.

(1) The indictment does not state an offense. The allegations in the indictment are that the accused testified that he did not believe, or did not recall, etc., but of these there is no negation. There is no averment that the accused did believe, or did recall. State v. Faulkner, 175 Mo. 600. (2) The exclusion of the evidence as to the possible want of memory on the part of the appellant was inexcusable error. (a) The case was tried upon a totally false hypothesis. The issue was not whether any person had been visited by the appellant, but whether at the time when he was sworn, if he was sworn, he believed that he had visited such person, or recalled the fact of such visit. (b) Appellant was not charged with having denied that he had visited any person. Had such been the specific charge, his failure to recall, his indication of want of belief, might have been looked upon as evasions. The theory of the court's procedure imported into the indictment a charge which the indictment did not make. (c) There was no issue of general character, like that of incapacity to appreciate the moral or physical consequences of an act. There was nothing on which to predicate a situation of confession and avoidance, over which the court seems to have become bewildered.

The charge was that appellant falsely swore that he did not recall, or that he did not believe.    To this he pleaded not guilty.    (d) The evidence excluded tended to prove that, down to a date recently before the alleged false swearing, the appellant apparently stood on the brink of paresis, and that his memory was wholly unreliable.    To say that evidence, such as was excluded, after having been admitted, did not bear upon the issue before the jury, is nonsense.    Rarely has a more palpable lack of appreciation of the rights of a defendant, or the real issue in a given case, on the part of a trial court, been called to the attention of an appellate tribunal.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State; *Arthur N. Sager* and *C. Orrick Bishop* of counsel.

The indictment fully sets forth the substance of the alleged false oath, a legally organized grand jury, and the name of the foreman thereof before whom the oath was taken, the taking of the oath, and the authority of the foreman to administer such oath; that the testimony alleged to be false was material and the matter and issue under investigation, so that the court could determine upon such materiality; and, omitting from consideration that part of the indictment assigning perjury, the indictment fully complies with every requirement of the statute.    R. S. 1899; sec. 2039; State v. Gordon, 196 Mo. 185; State v. Cave, 81 Mo. 450; State v. Huckeby, 87 Mo. 414.    The indictment does not traverse and negative the alleged false oath by charging that in truth and in fact the said William R. Coyne did then and there believe and well know that he did at the time and place mentioned, in the first assignment of perjury, approach Henry Ascher and propose, for the fee of one thousand dollars, to assist in the passage of the ordinance.    Instead of

a traverse in the form aforesaid, the indictment, in assigning the perjury and negativing the alleged false oath, charges that in truth and in fact the defendant did visit Henry Ascher at the time and place mentioned and did propose for a fee of one thousand dollars to assist in the passage of the ordinance, etc., "as he, the said William R. Coyne, then and there well knew." Is the assignment of perjury thus made insufficient to constitute a valid charge of perjury? (1) If the alleged false oath had been a direct and absolute denial of the fact contained in the question asked, and had been so charged in the indictment, the assignment of perjury, as charged in the indictment under consideration, would, under the authorities, clearly have been sufficient, and that without the concluding words "as he, the said William R. Coyne, then and there well knew." Brown v. State, 57 Miss. 436; State v. Lea, 3 Ala. 605; 2 Chitty, C. L., 312, 320; 4 Went., 231; Roscoe's Cr. Ev., 684; 2 Russ., 542; State v. Raymond, 20 Iowa 585; 16 Ency. Pl. & Pr., p. 341. (2) The knowledge of falsity required to be averred when, as in this case, the alleged false oath is as to the belief of the witness, is not knowledge of the falsity of the belief sworn to, but knowledge of the truth of the fact denied in the alleged false oath, and such knowledge at the time such oath was taken. In this case, as alleged in the indictment, the defendant denied visiting Henry Ascher at the time and place and for the purpose alleged, by answering, "I do not believe I did." If the assignment of perjury had negatived the oath by averring that in truth and in fact the said William R. Coyne then and there well knew that he, the said Coyne, did visit the said Henry Ascher at the time and place and for the purpose mentioned, and that the said Coyne did in fact so visit the said Ascher, such assignment would undoubtedly be a traverse of the alleged false oath, and would be sufficient in law. Yet, no sub-

stantial distinction can be made between the case of an assignment of perjury in which the knowledge of the truth of the fact at the time of the denial thereof, upon belief, is followed by the averment as to the truth of the fact itself, and the case under consideration, in which the assignment first alleges the truth of the fact, denied upon belief in the alleged false oath, and alleges in connection therewith and immediately following the knowledge of the truth of the fact so denied, at the time of such denial, in the language, to-wit, "as he, the said William R. Coyne, then and there well knew." The words last quoted, taken in connection with the averment immediately preceding, are susceptible of but one meaning, and that is, that when the defendant testified that he did not believe that he ever visited Henry Ascher at the time and place for the purpose mentioned, he had in fact so visited Ascher and well knew that he had when he so testified. In either case, the alleged false oath is traversed, and it is impossible to distinguish the two forms, for the only difference is the order in which the truth of the fact denied and the knowledge thereof at the time of the alleged false oath are set forth in the assignment of perjury. State v. Terry, 30 Mo. 368; Kelley's Cr. Law and Prac., sec. 704.

GANTT, J.—At the December term, 1907, of the circuit court of the city of St. Louis, the defendant William R. Coyne was indicted by the grand jury for perjury. He was tried and convicted, and his punishment assessed at two years in the penitentiary. After ineffectual motions for new trial and in arrest of judgment, he was sentenced in accordance with the verdict and from that judgment he has appealed to this court. Omitting the formal parts the indictment is as follows:

"That a certain investigation and inquiry was

then and there pending before said grand jury into
all crimes and felonies committed and triable within
the said city of St. Louis, and more particularly cer-
tain offenses of bribery and solicitation of bribes, and
conspiracy to solicit, accept and receive bribes, al-
leged to have been committed by certain members of
the House of Delegates of the Municipal Assembly of
the city of St. Louis, and particularly one Ferd War-
ner and one Frederick W. Priesmeyer, who were then
and there members of the said House of Delegates of
the Municipal Assembly, and public officers of the city
of St. Louis, in connection with certain bills, ordinances
and measures which were or had been pending in said
House of Delegates by which it was proposed by the
city of St. Louis to give and grant certain rights, privi-
leges and franchises to sundry and divers persons and
corporations in said city of St. Louis.

"That in the course of said inquiry and investiga-
tion in the city of St. Louis, and on or about the 28th
day of October, in the year one thousand nine hun-
dred and seven, one William R. Coyne was duly sum-
moned as a witness, and did then and there personally
appear as a witness before the said grand jury in re-
gard to the said inquiry and investigation then and
there pending; that the said William Coyne was then
and there duly sworn by the foreman of said grand
jury and took upon himself his corporal oath; the said
foreman, to-wit, one George T. Riddle, being then and
there duly and legally authorized and empowered, and
having competent authority to administer the said oath
to the said William R. Coyne, and that then and there
it became and was important, competent and material
to the investigation and inquiry then and there pend-
ing before said grand jury to inquire and ascertain
whether he, the said William R. Coyne, had ever ap-
proached any person, firm or corporation in the city
of St. Louis and proposed to aid or assist in, procure

and secure the passage of any ordinance, bills or measures pending in the House of Delegates or Municipal Assembly of the city of St. Louis, in which such persons, firms or corporations were interested, for a fee or money consideration and whether he, the said William R. Coyne, had ever represented himself as an agent of the House of Delegates of the city of St. Louis, or any member thereof; and then and there he, the said William R. Coyne, upon his said corporal oath and before the said grand jury, did feloniously, falsely, corruptly, knowingly and willfully, depose and swear in substance to the effect following:

"That he, the said William R. Coyne, did not believe that he, the said William R. Coyne, had ever at any time approached any person, firm or corporation interested in the passage of any ordinance by the Municipal Assembly of the city of St. Louis and proposed to them, or either of them, to assist in the passage of such ordinance for a money consideration;

"That he, the said William R. Coyne, did not remember that he, the said William R. Coyne, had ever at any time represented himself as an agent of the House of Delegates of the city of St. Louis, or of any member thereof;

"That he, the said William R. Coyne, did not think that he, the said William R. Coyne, had ever approached one Henry Ascher or any other person and proposed to him or them, or either of them, that he, the said William R. Coyne, would aid or assist in the passage of any ordinance pending in the House of Delegates in the city of St. Louis, if he, the said William R. Coyne, was given a fee;

"That he, the said William R. Coyne, did not remember whether he, the said William R. Coyne, had ever approached one Henry Ascher, or any other person, in the city of St. Louis, and proposed that for a money consideration he, the said William R. Coyne,

would aid in and attempt to pass any ordinance pending before the House of Delegates in the city of St. Louis;

"That he, the said William R. Coyne, did not recall that he, the said William R. Coyne, had ever at any time gone to any person or the representative of any firm or corporation in the city of St. Louis with the specific purpose of securing employment with reference to the passage of some ordinance pending in said House of Delegates in which such persons were interested;

"Whereas, in truth and in fact, he, the said William R. Coyne, in the city of St. Louis and on or about the fifth day of September, A. D. 1907, visited one Henry Ascher and stated to said Henry Ascher that he (the said Coyne) had been sent to said Henry Ascher by one Ferd Warner (who was then and there a member of the said House of Delegates) to confer with said Ascher about and concerning a certain ordinance then and there pending in said House of Delegates wherein it was proposed to grant to said Ascher the right and privilege of erecting and maintaining an automobile garage, and he, the said William R. Coyne, did then and there propose to the said Ascher that he employ him (the said Coyne) and pay him a fee of one thousand dollars to aid and assist in the passage of said bill or ordinance then pending in said House of Delegates, as he, the said William R. Coyne, then and there well knew.

"And whereas, in truth and fact, he, the said William R. Coyne, in the city of St. Louis, and on or about the 14th day of September, 1907, visited one Charles C. Higham, the works manager of the American Brake Company, and talked with him about and concerning a certain ordinance then pending in the said House of Delegates, whereby it was proposed to grant to the St. Louis Merchants Bridge Terminal Railway

Company the right and privilege to construct, maintain and operate certain spur tracks to reach the plant of the American Brake Company, and in which said ordinance the said American Brake Company was interested, and stated that it would be necessary for said American Brake Company to pay the sum of one thousand dollars, in order to secure the passage of said ordinance by said House of Delegates; and that unless such sum of one thousand dollars was so paid, said ordinance would not be passed by said House of Delegates; and that for a fee of one thousand dollars (to be paid him, Coyne) he would get behind said bill or ordinance then pending in said House of Delegates and aid and assist in its passage; as he, the said William R. Coyne, then and there well knew.

. "And whereas, in truth and in fact, the said William R. Coyne, in the city of St. Louis and on or about the 28th day of September, 1907, visited one F. C. Bretsnyder, who was then and there the president and manager of the Bell Oil Company, and talked with him about and concerning a certain ordinance then pending in said House of Delegates, whereby it was proposed to grant to the Wabash Railroad Company the right and privilege to construct, maintain and operate a switch or side track in said city of St. Louis, and in which said ordinance the said Bell Oil Company was interested, as such proposed side track was to reach the plant of the said Bell Oil Company, and he, the said William Coyne, did then and there propose to the said Bretsnyder that he (the said Coyne) be employed and paid a fee of one thousand dollars to aid and assist in the passage of said bill or ordinance then pending in said House of Delegates; as he, the said William R. Coyne, then and there well knew.

."And whereas, in truth, and in fact, he, the said William R. Coyne, in said city of St. Louis, on or about the 28th day of September, 1907, visited one Wil-

liam P. Bohnenkamp, who was then and there the counsel and attorney of the Bell Oil Company, and talked with him about and concerning a certain ordinance then pending in the House of Delegates, whereby, it was proposed to grant certain side track and switch privileges to the said Wabash Railroad Company as aforesaid, and in which said ordinance the said Bell Oil Company was interested, as such proposed side track was to reach the plant of the said Bell Oil Company, and he (the said Coyne) did then and there propose to the said Bohnenkamp that he, the said Coyne, be employed and paid a fee of one thousand dollars to aid and assist in the passage of said bill or ordinance then pending in said House of Delegates; as he, the said William R. Coyne, then and there well knew.

"And whereas, in truth and in fact, he, the said William R. Coyne, in the city of St. Louis, and on or about the 15th day of September, 1907, visited one Joseph F. Liebke, of the C. F. Liebke Hardwood Mill and Lumber Company, and talked to him about and concerning a certain ordinance then pending before the House of Delegates, wherein it was proposed to vacate certain streets and alleys in the city of St. Louis, in which said C. F. Liebke Hardwood Mill and Lumber Company was interested as desiring to use for a lumber yard the ground so proposed to be vacated, and he, the said Coyne, did then and there propose to the said Liebke that he (the said Coyne) be employed and paid a fee of ten thousand dollars to aid and assist in the passage of the said bill or ordinance then pending in the said House of Delegates; as he, the said William R. Coyne, then and there well knew.

"And so the grand jurors aforesaid, upon their oath aforesaid, do say that the said William R. Coyne, at the city of St. Louis aforesaid, on or about the

twenty-eighth day of October, in the year one thousand nine hundred and seven, in the manner and form aforesaid, knowingly, willfully, corruptly, falsely and feloniously, did commit willful and corrupt perjury. Against the peace and dignity of the State."

Of the alleged false oaths upon which the perjury is assigned only two were submitted to the jury, to-wit, that he, the said William R. Coyne, *did not believe* that he, the said William R. Coyne, had ever at any time approached any person, firm or corporation interested in the passage of any ordinance by the Municipal Assembly of the city of St. Louis and proposed to them or either of them to assist in the passage of such ordinances for a money consideration, and that he, the said William R. Coyne, *did not recall* that he, the said William R. Coyne, had ever at any time gone to any person or representative of any firm or corporation in the city of St. Louis with the specific purpose of securing employment with reference to the passage of some ordinance pending in the House of Delegates, in which such persons were interested.    The assignment of perjury as to the first of said alleged false oaths is charged as follows:    "Whereas, in truth and fact, he, the said William R. Coyne, in the city of St. Louis, and on or about the 5th day of September, A. D. 1907, visited one Henry Ascher and stated to said Henry Ascher that he, the said William Coyne, had been sent to Henry Ascher by one Ferd Warner (who was then and there a member of the House of Delegates) to confer with said Ascher about and concerning a certain ordinance then and there pending in said House of Delegates, wherein it was purposed to grant to said Ascher the right and privilege of erecting and maintaining an automobile garage, and he, the said William R. Coyne, did then and there propose to the said Ascher that he employ him the said Coyne and pay him a fee of one thousand dollars to aid and as-

sist in the passage of said bill or ordinance then pending in said House of Delegates; as he, the said William R. Coyne, then and there well knew." Thus it will be observed that while the alleged false oath as charged was in the one case "that he, the said William R. Coyne, *did not believe* that he at any time approached any person," etc., and in the other, that he, the said William R. Coyne "*did not recall* that he had ever gone to any person," etc., the assignment of perjury does not, in the first case, charge that the defendant did in truth and in fact then and there *believe* and well knew that he, the defendant, did at a certain time approach Henry Ascher, etc., and in the second case that the defendant did then and there *recall* and well knew that he had in the city of St. Louis on the 15th of September, 1907, visited one Joseph Liebke, but the said assignments negative the alleged false oaths by charging the fact to be true, which the defendant in his oath denied upon belief, and by charging the fact to be true, which in his oath the defendant testified that he did not *recall,* and at the close of each assignment concludes with the averment "as he, the said William R. Coyne, then and there well knew."

Section 2039, Revised Statutes 1899, provides that "in any indictment for perjury, it shall be sufficient to set forth the substance of the offense charged, and by what court or before whom the oath was taken, averring such court or person to have competent authority to administer the same, and that the matter or testimony alleged to be false was material to a certain matter or issue named, without setting forth the particular facts showing its materiality, together with the proper averments to falsify the matter wherein the perjury is assigned." This indictment sets forth the substance of the alleged false oath, a legally organized grand jury, and the name of the foreman thereof

before whom the oath was taken, the taking of the
oath and the authority of the foreman to administer
such oath; that the testimony alleged to be false was
material and the matter and issue under investigation.
But the question arises as to whether there were
proper averments to falsify the matter wherein the
perjury is assigned. The indictment does not traverse
and negative the alleged false oath by charging that
in truth and in fact the said William R. Coyne *did
then and there believe and well know* that he did at
the time and place mentioned in the first assignment
of perjury approach Henry Ascher and propose for the
fee of one thousand dollars to assist in the passage
of the ordinance, but charges that in truth and in fact,
the defendant did visit Henry Ascher at the time and
place mentioned and did propose for a fee of one
thousand dollars to assist in the passage of the said
ordinance, "as he, the said William R. Coyne, then
and there well knew." In Brown v. State, 57
Miss. l. c. 436, it was said, "The averment in an in-
dictment for perjury that the accused knew that the
matter sworn to was false is necessary only where
the oath is as to the belief of the affiant. In such
cases, it is held that knowledge of the affiant to the
contrary must be averred. [State v. Lea, 3 Ala. l. c.
605 and 606.]" In the case last cited, it was said,
"In the present case, the matter sworn to was not that
the prosecutors committed a larceny, though the ef-
fect of the affidavit was to charge them with that
crime, and thereby to commence a prosecution, but
was, that the defendant *believed* that they had com-
mitted such crime. The averment in the indictment
that no such crime was committed by them does not
show that the defendant swore falsely. In order for
the assignment to produce this consequence, it should
also have been averred that the defendant well knew
the contrary of that of which he stated his belief to

be true.  Such are the most approved precedents.''
[2 Chitty, C. L., 312, 320; Roscoe's Cr. Ev., 684; 2
Russ. 542.]  ''We are compelled,'' said the court, ''to
resort to precedents as persuasive authority, in the
absence of decisions upon this point, but independent
of them, we think it clear from the reason of the thing
that the assignment should form an issue *upon the
precise matter sworn to.*''  The object of the assign-
ment of perjury is to falsify by averments in the indict-
ment those parts of the defendant's statements on oath
which are intended to charge him on the trial with
having committed the offense in question.  And in
negativing the defendant's oath where he was sworn
only to his belief, it should be averred either that the
defendant did not believe what he swore, or that he
believed and well knew the statements made by him,
under oath, were false.  At common law the form of
this averment was, ''All of which statements made by
the said J. S., the said J. S. then and there well knew
to be false.''  [2 Whar., Precedents of Indictments, sec.
577.]  In State v. Ah Lee, 18 Oregon l. c. 543, it is
said that notwithstanding the statute in regard to
indictments of perjury, ''it is not intended by this to
suggest that knowledge of the falsity of the matters
sworn to is eliminated from this crime.  If such knowl-
edge was a necessary ingredient of the crime before the
enactment of the Code, it is so still.  The Code has
wrought no change in the substance of the crime.  It
has only abolished useless forms.''  In Cook's Case,
1 Rob. (Va.) 729, ''An indictment against an insolvent
debtor for perjury in swearing to a schedule which
did not discover certain debts owing to him, was held
bad on demurrer for not averring that he *well knew
and remembered* that the omitted debts were then
justly due and owing to him.''  In that case the indict-
ment charged that the defendant falsely and corruptly
swore that the schedule contained, to the best of his

knowledge- and remembrance, a full account of his estate, and such debts as were owing to him, when, in truth, certain debts owing to him (which were described in the indictment) ''were not embraced or included in the said schedule so subscribed and delivered by the said Cook, and the said Cook then and there well knew and remembered that the said schedule did not contain the said debts.'' But there was no averment that the defendant knew or remembered that the debts omitted in the schedule were owing to him. And the whole court held that this indictment was bad in not averring that the defendant at the time of giving in the schedule and taking the oath well knew and remembered that the debts charged to be improperly omitted in the said schedule were then justly due and owing to him. It will thus be seen that the authorities are practically uniform in holding that in negativing a defendant's oath, where he has sworn only to his belief, it is necessary to charge that he well knew the contrary of what he swore, as his knowledge is a necessary ingredient of the crime in such cases.

Now the matter upon which the perjury was assigned in this case, clearly was that the defendant had corruptly and falsely sworn that he *did not believe* that he had ever approached one Henry Ascher and proposed to him to aid in the passage of an ordinance for a given fee, and that he did not *recall* that he had ever at any time gone to any person or corporation with the view of securing employment with reference to the passage of an ordinance. The matter sworn to by him was not that he had not done these things, but that he had falsely testified that he did not believe that he had ever gone to Ascher and did not recall that he had ever done these things. As was said in State v. Lea, 3 Ala. 605, the averment that he did approach said Ascher does not show that he

testified falsely. In order to produce this consequence,
it was necessary for the pleader to have averred that
the defendant believed and well knew that the state-
ments made by him to the effect that he did not be-
lieve and did not recall, were false. And the allegation
at the end of the averment that the defendant did
solicit said fees as charged ''as he then and there well
knew,'' in our opinion falls far short of the require-
ments of the common law, which has not been modified
by our statute in regard to the assignments of an indict-
ment for perjury wherein knowledge is of the essence
of the crime.

In 2 Chitty's Crim. Law, mar. page 312, that
learned and accurate author, speaking upon this sub-
ject, says: ''These averments or assignments of per-
jury, as they are technically termed, should be specific
and distinct, in order that the defendant may have
notice of what he is to come prepared to defend, and
it would, therefore, be insufficient to aver generally
and indefinitely that the defendant's oath was false.
And where an indictment for perjury committed in
the insolvent debtors' court alleged that the defendant
falsely, etc., swore 'that his schedule presented to that
court contained a full, true and perfect account of all
debts owing to him, whereas in truth and in fact,
the schedule did not contain a full and true and per-
fect account of all debts owing to him,' without specify-
ing any debts omitted, it was held that this indictment
was bad. [1 Ry. & M. 210.]''

It results that, in our opinion, the indictment was
insufficient. It may be added that the indictment may
be assailed in this court for the first time, as the
defect that it does not state facts sufficient to con-
stitute a crime is one which is apparent upon the face
of the record. Having reached the conclusion that the
indictment is invalid upon the first assignment of error,
we deem it unnecessary to pass upon the second and

third assignments, as they may be cured in a subsequent indictment, but as the judgment must be reversed and the cause remanded and a new indictment may be found, the fourth assignment, to-wit, the exclusion of the evidence tending to prove that down to a date recently before the alleged false swearing, the defendant apparently stood on the brink of paresis and that his memory was wholly unreliable, should be considered, in order to advise the circuit court, if another indictment is found, of our views as to the admissibility of this testimony.

It seems that the circuit court admitted this evidence and then afterwards by an instruction excluded it. The language of the instruction was as follows: "You are instructed that all testimony introduced by the defense for the purpose of showing total or partial insanity of the defendant on the 28th of October, 1907, will be disregarded by you for the reason that such testimony is insufficient to establish such defense."

As we have already seen, the knowledge of the defendant of the falsity of his testimony before the grand jury is of the very essence of the charge against him in this case. The purpose of the testimony offered and excluded by the court, was not to establish that the defendant was insane, but that owing to disease and nervous disturbances he had evinced a great loss of memory, up to April, 1907. This testimony was not for the purpose of showing that he was either wholly or partially unable to appreciate the moral or physical consequences of an act, but to show that his memory was wholly unreliable, and this not by himself but by other witnesses who had occasion to observe his conduct independent of this charge. We can not see any reason why it was not competent for the defendant to introduce this testimony as tending to show the jury that, notwithstanding they might believe beyond

all doubt that he did in fact solicit employment from
Ascher and others to aid them in getting their ordi-
nances through, still that, owing to this failure of
memory, he did not recall and did not remember, at
the time, these propositions to Ascher and others.
The indictment and the plea of not guilty tendered the
issue to the jury whether the defendant honestly be-
lieved, as he stated, or whether honestly he did not
recall those visits to Ascher and others. "Memory,"
says Sir William Hamilton, "is the power of retain-
ing knowledge in the mind. The mental power of
recognizing past knowledge." That men may and do
have what is denominated unsound memories although
otherwise of sound mind, is a matter of common knowl-
edge. It is most generally observable in persons of old
age, who have lost the power to remember past events,
but no one would class them as insane persons. That
such a person might do an act and be perfectly con-
scious of it, and of its moral and legal effect, and yet
forget it, we take it is not open to dispute. Of course,
it would be for the jury to credit or discredit this
testimony and believe or not believe it, as it appeared
reasonable or unreasonable to them, but the question
here is one of competency. Did the defendant have
the right to show to the jury that he was in a con-
dition bordering upon paresis or a partial paralysis
affecting his muscular motion, due to a disorder of
the central nervous system, and that this had so af-
fected his memory that he was known in the ordinary
transactions of business to forget one day what had
occurred the day before or a week before? We think
that the court in ascribing the offer of this evidence
to an attempt to prove insanity, either total or par-
tial, misapprehended the purpose of the evidence, and
that its instruction in withdrawing it on that ground
from the jury was erroneous. The whole purpose of
the testimony, as we view it, was to place the jury in

possession of the condition of the defendant's mind at the time of the alleged perjury, and to allow them to say whether the statements of the defendant before the grand jury, that he did not believe or did not recall his statements to Ascher and others, were honest or not. And if they were honest, then he had not committed perjury. It is not for us to credit or discredit this statement in view of all the testimony in the case, but it was a question of fact for the jury to determine. Our conclusion is that the court committed error in excluding this testimony from the jury by its instruction.

For the reasons given the judgment is reversed and the cause remanded so that the circuit attorney may cause a new indictment to be preferred if he shall so desire, and to that end that the defendant should be recognized for the further action of the grand jury if deemed proper by the circuit court.

*Fox, P. J.,* and *Burgess, J.,* concur.