## Bryant, et al. v. Bryant et ux.

(Decided October 19, 1928.)

### Appeal from Laurel Circuit Court.

Deeds.—Evidence held sufficient to support a judgment dismissing a petition to cancel a deed on the ground of grantor's mental incapacity.

WM. LEWIS & SON for appellants.

GEORGE G. BROCK for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

W. C. Bryant and other children and heirs of F. F. Bryant sought to cancel a deed which F. F. Bryant had made to the appellees, Joe and Hazel Bryant, because he was, as they allege, at the time he made it, so mentally and physically infirm as to be unable to make a valid contract, and that this deed was procured by an undue influence exercised over F. F. Bryant by the appellees. They were unsuccessful, and have appealed.

F. F. Bryant died in 1920. This petition was filed in 1922. The deed had been made in 1915 and recorded in 1916. There was proof that the appellees, Joe Bryant and his wife, had received the pension which F. F. Bryant was drawing, which pension at the time he first went to live with them amounted to $22.50 per month, but which was increased until at the time of his death he was drawing $30 per month. There was proof also that the old man had sold about $1,000 worth of property, and that

Joe Bryant and his wife had got that money, but the proof showed that this man was a helpless cripple; that Joe Bryant and his wife for 6 years took care of him, nursed him, fed and provided for him, and buried him when he died. He was about 90 years of age when he died, and had been for several years quite helpless, owing to having fallen and broken his legs, as the result of which, he was a cripple, unable to walk, except with crutches, and for a large part of the time not able to walk in that manner. He had to be cared for and attended to almost as a baby.

The evidence upon the question of his mental capacity was conflicting. The weight of the evidence would seem to indicate that, though physically helpless, the old man was not mentally so. Upon the question of undue in-influence, there is little or no competent evidence in the record. The plaintiffs showed by Mrs. Ibach, J. P. Catchnig, Dr. J. T. Mix, "an herbalist," Martha Williams, and Henry C. Hazelwood, that the old man's memory was poor, but a poor memory does not necessarily mean the loss of business capacity. In the case of State v. Coyne, 214 Mo. 344, 114 S. W. 8, 21 L. R. A. (N. S.) 993, the Supreme Court of Missouri said:

"That men may and do have what is denominated unsound memories, although otherwise of sound mind, is a matter of common knowledge. It is most generally observable in persons of old age, who have lost the power to remember past events, but no one would class them as insane persons. That such a person might do an act and be perfectly conscious of it, and of its moral and legal effect, and yet forget it, we take it is not open to dispute."

Anderson Bryant said, "The old man's mind was in bad shape." Robert Williams said it was "shackly." Joe Bryant said it was childish. These things were largely conclusions of these witnesses, but they did not testify to anything the old man did which would indicate he was mentally infirm, further than this, that his memory was poor. Susie Catchings said, "His mind wandered, and he talked foolish." She continued her testimony, and said that the old man told her that Joe had received the money from the land that he had sold and that Joe was getting his pension, and he thought that was enough, and he wanted his land divided among his children. This part of her evidence puts the first part of it in very seri-

ous doubt, for she very clearly shows the old man knew exactly what he was doing. He knew what Joe was getting, he knew he had sold his land, and he thought his other land ought to be divided among his children. From this record it appears that that is exactly what the man did. He gave each of his children 50 acres of land. Joe got a little more than the others, but we must not forget Joe's keep and care of this man for 6 years, during a large part of which time he was unable to get up and attend to the calls of nature and sometimes he was unable to control those calls, which resulted in his soiling his bed and his clothing, and the evidence shows this did not happen occasionally, but frequently, and toward the latter part of his life several times a day.

The statute of limitation was not pleaded, yet the staleness of this thing glares at one from the record. All these plaintiffs knew all about these deeds years before the old man died. If he was infirm, these deeds could have been attacked then when the old man would have been present to have manifested either his infirmity or his mental vigor, and could have given his reasons, if he had any, for doing as he had done. On the other hand, the evidence to sustain these transactions is overwhelming. Dr. Smith, Dr. Brock, Dr. Owsley, and Dr. Bryan, all regular and reputable physicians, examined this man. All of them say that his mental condition was good, except Dr. Bryan adds that the old man was not as brilliant as formerly. That may be true, but it does not mean he was utterly incapable. In addition to these, a number of lay witnesses testified in support of the old man's mental capacity, so that the evidence that he knew what he was doing greatly exceeds the evidence to the contrary.

The chancellor, after hearing all this, dismissed the plaintiff's petition. The evidence abundantly supports that action.

The judgment is affirmed.